# UNITED STATES

*v.*

# H. N. CLARITY.

San Juan, Criminal, No. 859.

IMPOSING OF SENTENCE.

Lottery Law—Foreign Lottery.

    1. The Antilottery Law applies to investment of money in lotteries in foreign countries just as much as to domestic ones.

Same—Punishment.

    2. The punishment for sending a letter relating to a lottery to a man should be apportioned to the defense. The judge cannot consider his personal relations to the defendant provided they do not amount to interest.

Evidence—Acquired through Censorship.

    3. The fact that evidence in a case was acquired through the operation of the war censorship is not material. The censorship is constitutional and wise, and evidence so discovered can be used whether relating to war activities or any other offense.

Same—Punishment.

    4. The fine imposed may well be the amount of money sought to be invested in the lottery tickets and light imprisonment for the first offense, with warning that this does not control in future cases.

Opinion filed March 6, 1918.

*Mr. Miles M. Martin,* United States attorney, for the government.

*Mr. Chas. Hartzell* for the defendant.

United States v. Clarity.

HAMILTON, Judge, delivered the following opinion:

There are one or two things connected with the law of the case I would like to get straight in my mind. As I understand it, here is an indictment under § 213 of the Criminal Code of the United States which relates to a letter concerning a lottery, which was sent by the defendant to F. L. Graham in Havana. It requests that Graham buy the defendant ten tenths of a lottery ticket for the Christmas drawing of the lottery. It does not say which lottery, but I suppose it is the Cuban lottery. There were certain directions as to the numbers to be chosen, and in the letter was indorsed the necessary check or bank draft of $105 for that purpose. The probability seems to be that this $105 would come back ultimately to the sender, but that is not before me and I do not pass on it. This was to be invested in Havana in something which in Havana is regarded as a legitimate investment.

The first question that comes up, therefore, is whether this is an offense against § 213, or does the law in § 213 apply only to lotteries in this country? Ordinarily, apart from moral questions, the defendant or anybody has the right to send money to be invested in securities which can be handled in one country although they might not be available in another. But when it comes to moral questions, I take it that there would be no doubt that the policy of the law is to prohibit not only the bringing of lottery tickets into the United States, but bringing into the United States money that is acquired by investment in a foreign lottery. It is in pari materia. I take it there can be no question that the law is to be construed so as to include investment in a foreign lottery, even though the ticket never reaches the States.

United States v. Clarity.

I go over this simply to make the matter clear, because, as I understand it, this is the first time this particular matter has come before the court, and I am not cited to any cases in any other court. So, I take it that the defendant acted properly in pleading guilty, that is to say, there is no defect in the indictment. That would be the first point, and that is out of the way.

The second, and the more troublesome, one is what punishment shall be inflicted. If the defendant pleads guilty, of course there has to be punishment. The punishment contemplated by the section is possibly a severe one, "shall be fined not more than $1,000 or imprisoned not more than two years, or both." That is the outside limit. It is not fine and imprisonment, but fine or imprisonment or both, and $1,000 is the outside limit of fine. In other words, if the great capital prize were won, the fine would be limited to $1,000. Of course it should be apportioned in some way or other to the present offense.

Let me say in passing, although it is not necessary to say it, that whatever punishment is inflicted in this case is inflicted by this court with great regret of the Judge himself. I have known the defendant ever since I have been in Porto Rico. Our relations have been most pleasant. I am indebted to him for courtesies; and I do not know of any case, which, so far as personality is concerned, has come before me, in which it was more painful for me to act. But that is of course not the question before me. Somebody has to act in the case, and the same might be true of any Judge, and I have to consider not my side of it but the defendant's side of it,—what is right under the circumstances as to him. Nor can I draw any distinction in this case from any other so far as it relates to right or wrong. In some

X. Porto Rico.—20.

United States v. Clarity.

respects that would make it a greater offense. So I have to consider the case simply as a case and put aside any personal feelings.

The suggestion is made that the information as to this offense reached the government through the war censorship of foreign mail, designed to detect war offenses. If this were an objection, it would have to be raised at the production of the evidence before the trial; and under the circumstances of the Cereccdo Case, 6 Porto Rico Fed. Rep. 608, the objection could not be entertained at the trial itself. Here there was no trial, because the defendant has pleaded guilty. Even taking the point into account, however, it does not bear upon the offense, which has been confessed. There is no question made that the censorship law is constitutional and wise. It would be going too far to require the government to retain a letter which related to improper war activities and to forward to the addressee a letter which revealed a domestic crime. Discovery in the latter case is incidental to the legal right in the former case. It is proper for the government to proceed against a crime, no matter from what source the evidence is derived. The only way that the point of its being a private letter can be taken into account is that, while the intent to buy a lottery ticket is shown by the letter, which is a crime itself, nothing came from it, which might make it a lower grade of offense. No ticket was actually bought, no prize drawn, no money remitted to the defendant. This might possibly be considered in fixing the amount of the punishment, but not otherwise.

What would be adequate? It has been suggested, and suggested with force, that it has not been known to laymen before, that it was an offense to invest in a lottery ticket in a foreign

United States v. Clarity.

country. All other cases that have come up in Porto Rico have been where Porto Ricans have brought tickets here, or, in a late case, where a Spaniard brought tickets into the Island. And I confess that that appeals to me with great force because I have had to reason it out at some length to see how it comes about that what is legal in one country cannot be carried out in another country. So I will take that into account very cheerfully. This is not only the first offense of this defendant in this kind of case, I understand there is no question of any offense of any character heretofore, and it is in a matter as to which people differ,—but courts do not differ.

Now as to imprisonment; I take it this is the most serious question; that imprisonment would be more regretted by the defendant himself and by his friends. A a Judge I cannot act as a friend or as a foe. I have to be impartial. I think I will do this; I think this would be adequate. The transaction itself fixes the amount of money which is involved. As this is the first case of its kind I will go to the minimum that I think I can go to. I am not willing to forego entirely the question of imprisonment. I never have in these cases. But I will make that so that it will be not a threat, but an indication that the court makes no exceptions, and that if in the future any such case comes up again the result would be entirely different.

The sentence of this court is that you pay a fine of $105, and that you be imprisoned until 12 o'clock to-night. I do not think I could impose a lighter punishment. Certainly it would be far from my wishes to impose anything heavier. This will be the sentence of the court.